IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

UNITED STATES OF AMERICA,                    )
                                             )
        v.                                   )
                                             )        1:22-cr-120 (LMB)
CHRISTOPHER WILLIAM KUEHNER,                 )
                                             )
        Defendant.                           )

MEMORANDUM OPINION

After a two-day bench trial, the Court found the defendant Christopher William Kuehner ("Kuehner" or "defendant") guilty of engaging in a child exploitation enterprise in violation of 18 U.S.C. § 2252A(g). This Memorandum Opinion details the findings of fact and conclusions of law supporting the conviction announced in court.

I. BACKGROUND

On July 14, 2022, Kuehner and four codefendants, Nathan Daniel Larson ("Larson"), Jacob Royce Mullins ("Mullins"), Kyle William Leishear ("Leishear"), and Matthew Martin ("Martin") (collectively, "codefendants"), were indicted on one count of engaging in a child exploitation enterprise in violation of 18 U.S.C. § 2252A(g). [Dkt. No. 1]. The indictment charged that from September 2020 through December 2020, within the Eastern District of Virginia and elsewhere, Kuehner committed multiple violations of chapters 110 and 117 of Title 18 of the United States Code as part of a series of felony violations constituting three or more separate incidents, involving more than one minor victim, in concert with three or more other persons. Id. As reflected in the government's response to Kuehner and the codefendants' joint motion for a bill of particulars, Kuehner was alleged to have committed the following predicate offenses as part of the child exploitation enterprise: production, attempted production, and

conspiracy to produce child pornography, in violation of 18 U.S.C. §§ 2251(a) and (e); receipt, attempted receipt, and conspiracy to receive child pornography, in violation of 18 U.S.C. § 2252(a)(2); transportation, attempted transportation, and conspiracy to transport child pornography, in violation of 18 U.S.C. §§ 2252(a)(1) and (b)(1); and coercion and enticement and attempted coercion and enticement, in violation of 18 U.S.C. § 2422(b).  [Dkt. No. 70].

Larson died while he was in pretrial custody for other pending criminal charges in California, and as a result, the indictment was dismissed as to Larson on October 12, 2022.  [Dkt. No. 61].  On January 3, 2023, Martin and Mullins pleaded guilty, and on January 5, 2023, Leishear pleaded guilty.  See [Dkt. Nos. 74, 78, and 86].  Kuehner subsequently waived his right to a trial by jury and consented to a bench trial, [Dkt. No. 95], which was held on January 23 and 24, 2023.

## II. FACTUAL FINDINGS

The evidence introduced at trial consisted of numerous transcripts of Kuehner's public and private online conversations with minors, online discussion posts and sexually explicit images and videos, live testimony of three minor victims, and a recorded interview of Kuehner, among other documentary and testimonial evidence.  This evidence established the following facts.

### A.  **The Rapey Website**

Larson was the creator and administrator of a now-defunct website known as "Rapey.su" ("Rapey"), which he ran from his residence in Catlett, Virginia, which is within this judicial district.  Although the Rapey server was located overseas, Larson backed up the server to devices in his Virginia residence.  In December 2020, law enforcement seized the devices, and the Department of Justice Child Exploitation and Obscenity Section's High Technology

Investigative Unit subsequently recreated the Rapey website as of its last backup date of December 10, 2020, using a virtual machine process.[1]

Rapey was a website that contained forums, postings, galleries, and conversations about the sexual exploitation of minors and rape, in addition to other topics. Visitors to the website were able to register as a member and create a username and profile. In addition to making posts and sharing images and videos in discussion forums and galleries, members could interact with other members in a public chat, as well as engage in private direct messages with other members. Rapey had approximately 8,000 members, both adults and minors.

Members of the Rapey website had the ability to earn badges, which were essentially small colorful boxes of text descriptors associated with their profiles. Some of these badges were awarded based on user traits, like race or gender. Male users were given the badge "rapey" or "rapist," female users were given the badge "femoid," and badges were also available for transgender users [Ex. 214]. Users could earn other badges after performing specific activities on the website, such as "underwear model" for "girls" who posted a "full-body (including face)" picture in their underwear or "child molester" for users who posted sexually explicit images of minors. [Exs. 205, 214]. For example, Larson, who went by the username "Leucosticte,"[2] had badges including "Rapey," "White," "Administrator," "Aspiring pedodad," and "Misogynistic." [Ex. 202].

---

[1] At trial, defense counsel argued that the recreated website was not an accurate representation of Rapey, in part because of the existence of numerous backup copies and automatic housekeeping updates that would occur on the recreated website when it was accessed by prosecutors and law enforcement; however, the Court is satisfied that the recreated website is credible and accurately reflects the website as it existed on December 10, 2020.

[2] Usernames are capitalized as they appeared on the Rapey website.

3

Any person could view and register for an account on Rapey, but to be taken seriously on the website, users—and specifically females—had to become "confirmed" members. The requirements of the confirmation process changed over time and differed depending on the gender of the user, but female users were generally required to write "rapey.su" on their bodies and post various nude photos showing their faces, breasts, buttocks, and genitals, and upon being confirmed, would earn the "confirmed femoid" badge. [Exs. 205-205C]. Male users were required to post a photograph with "rapey.su" written on their bodies to earn the "confirmed rapist" or "confirmed boy" badge; however, at some point, Larson began requiring that male users also post nude photos. [Ex. 205]. Although some galleries were available to the public, only confirmed members could access certain features of the website, such as the ability to chat with other members.

### B. The Defendant's Conduct

On September 27, 2020, Kuehner registered as a member of Rapey and created a profile with the username "nechris." "Nechris's" profile initially identified himself as a "Caucasian/Asian" male with brown eyes and black hair, five feet and eight inches tall, and located in Washington state. [Ex. 213A]. His profile also included several answers to preset ideological questions for Rapey user profiles. For example, in response to the question "[w]hat do you think about rapecels and pedocels," "nechris" responded, "Some people are closed minded." [Ex. 212]. To the question "[i]f a man wants to rape his 3-year-old daughter up every hole while she's crying and screaming, do you have a problem with that?", "nechris" answered "No. Well, I do if it's on a plane." Id.

On September 30, 2020, "nechris" sent a request to the user "yoonji" asking to be confirmed and included a photo of his face with the words "rapey.su" written on his arm. [Ex.

212A].  The man in the confirmation photo resembled Kuehner.  Id.  "Nechris" was confirmed

and awarded the badges "Confirmed rapist" and "Rapey."  [Ex. 212].

The government produced significant evidence that as "nechris," Kuehner interacted with

at least seven minor users of Rapey, and over the course of those interactions, he and other users

encouraged the minors to produce and share sexually explicit images and videos.  Three of those

minor users—Minor Victim 1, who went by the username "Bananacabana," Minor Victim 2,

who went by the username "Pastel," and Minor Victim 3, who went by the username "yoonji"—

testified at trial and will be referred to by their usernames.  All three of them testified credibly

that they used the Rapey website and identified Kuehner in court as the individual behind the

username "nechris," with whom they had interacted on the Rapey website.

On September 30, 2020, the same day that he was confirmed, "nechris" participated in a

public chat conversation with "Bananacabana" and other Rapey users, including confirmed users

"Neverreal" and "AnonSlut."[3]  [Ex. 215].  "Bananacabana" testified that she was 14 at the time,

and her user profile accurately reflected that she was 14 and born in February 2006.  [Ex. 218].

In the public chat, "nechris" wrote, "It's been awhile since we've seen a pic from

@Bananacabana."  [Ex. 215].  He later wrote, "You have pretty brown eyes @Bananacabana,

and only like two pitures [sic].  [E]nough to get hard over but, not enough to finish," and then

continued, "[Y]ou don't like to leave guys hanging do you?"  Id.  "Bananacabana" responded,

"noooo i dont hehe."  Id.  The discussion among the users then turned to masturbation.  After

"Bananacabana" commented on how many times she had masturbated in a day, "nechris" replied

to her, "[V]ideo or it doesn't count."  Id.  While they were interacting in Rapey's public chat,

---

[3] The Court has determined that users who are described as confirmed in this Memorandum
Opinion were confirmed based on the badges associated with their profiles.

"nechris" and "Bananacabana" were also exchanging messages in a direct, private conversation on the website. [Ex. 215A]. In that direct conversation, "Bananacabana" told "nechris" that she was 14, and "nechris" shared personal details about himself, such as that he was 36, born in Australia, joined the military at age 18, and that his father was a "US [s]ailor." Id. The conversation soon turned sexually explicit, with "nechris" describing in graphic detail the sexual acts he wanted to perform with "Bananacabana" and the acts he wanted her to perform, and he encouraged her to send him sexually explicit videos, including of her masturbating. Id. "Bananacabana" asked, "How do I send videos?", and "nechris" provided instruction. Id.

Shortly thereafter, "Bananacabana" uploaded several videos to the media section of the Rapey website and wrote, "For @nechris," to which "nechris" responded, "Why thank you my dear. Most certainly appreciated." [Ex. 216D]. "Bananacabana" also created a post in the "Femoid gallery" titled "Me ;)" and uploaded a video that depicted herself exposing her genitals and masturbating. [Exs. 216-216B]. "Bananacabana" tagged "nechris" in that post, alerting him to it, and he responded, "[A]mazing." [Ex. 216A]. Multiple other users responded appreciatively to "bananacabana's" post. Id. A few days later, on October 3, 2020, in a conversation in Rapey's public chat with confirmed user "Neverreal" and another user about "Bananacabana," "nechris" wrote, "I told banana that many of us want to see more, she asked see more what, I said p*ssy, that's why she posted that video and tagged me." [Ex. 217].

"Nechris" also engaged in several private and public conversations with the minor user "Skinny.freakkkk," whose profile reflected that she was 15 years old. [Ex. 242]. Law enforcement visited "Skinny.freakkk's" residence in Wyoming and verified that she was a minor female born in August 2005 and identified her in a video that the user uploaded to Rapey. [Ex. 503]. On September 30, 2020, "Skinny.freakkkk" created a post titled "My Omegle

Confirmation" and included a video depicting her nude with close-up shots of her breasts, genitals, and buttocks. [Ex. 243B-243B2]. "Nechris" and other users responded positively to the post. [Ex. 243B]. In a private conversation with "Skinny.freakkkk" on September 30, 2020, "nechris" encouraged her to make other videos. [Ex. 239]. He wrote, "Garuntee [sic] if you film any of your excepades [sic] . . . peeople [sic] will enjoy it," and asked how old she was. Id. "Skinny.freakkkk" responded that she was 15 and the male with whom she was involved was 14. Id. "Nechris" continued, "Yea, garuntee [sic], film escapades [sic] and it will be top posts up on here." Id. When the minor user questioned what he meant by "escepades," "nechris" replied, "Like if you blow him or something." Id.

Later on September 30, 2020, in Rapey's public chat among "Skinny.freakkkk," Larson, and other users, "nechris" messaged, "I will wait patiently for @Skinny.freakkkk's next video. 'Cause . . talk about hot." [Ex. 240]. Larson, as "Leucosticte," liked "nechris's" message with a thumbs-up and responded, "[S]he's an ephebophile's delight,"[4] which "nechris" liked. Id. Shortly thereafter "Skinny.freakkkk" commented that she had posted a video, and "nechris" wrote, "Just saw, watching it now. My god @Skinny.freakkkk you are . . . remarkable. Love the vid." Id. Confirmed member "DirtMcGirt" also responded appreciatively in the chat, writing, "Even in clean bath water you skinny are a dirty girl." Id. Larson commented, "[I]s there a way to fit more in the frame next time?", and added, "[T]hose tits tho [sic]," which "nechris" liked. Id. That day, "Skinny.freakkkk" uploaded a video of herself nude in the bath and touching her breasts, genitals, and buttocks. [Ex. 243D].

---

[4] Law enforcement testified that an "ephebophile" generally refers to someone who is sexually interested in post-pubescent minors, typically 13 to 17 years old.

A few hours later, "nechris," confirmed member "Neverreal," "Skinny.freakkkk," and another user discussed other videos they wanted her to produce. [Ex. 226]. "Nechris" wrote, "Awe sad, I was hoping a new video @Skinny.freakkkk," and described that he wanted to see her masturbate and have an orgasm, which "Neverreal" affirmed, commenting "same here." Id. "Skinny.freakkkk" responded that she would post a video the next day, to which "nechris" replied, "I dunno why she wants to wait until tomorrow. [S]he knows we all want it today. And she knows, we will absolutely enjoy it." Id. The next day, on October 1, 2020, "Skinny.freakkkk" uploaded two videos showing a close-up of her genitals and masturbating. [Exs. 243C, 243E].

On October 2, 2020, in Rapey's public chat, "nechris," along with confirmed members "AnonSlut" and "AgentNippy," chatted with minor user "Lilith" about the videos and photographs she would produce. [Ex. 236]. "Lilith's" profile stated that she was 15, [Ex. 237], and law enforcement visited her residence in Mississippi and identified her as a minor female born in March 2005. [Ex. 502]. When "Lilith" expressed that she wanted to get better photography equipment to "put on the best shows," "AgentNippy" responded, "We'll be waiting in anticipation Lilith lol." [Ex. 236]. "Nechris" replied that "Lilith's" phone would be "fine" and offered, "I'll screen your vids and pics for you, just [direct message] me." Id. The next day, in the public chat, "nechris" gave "Lilith" guidance on taking a close-up picture of her genitals. [Ex. 234]. "Lilith" then expressed that she had a "funny but painful idea" and made reference to inserting a brush in her anus, to which "nechris" responded, "Film it. I wanna watch." Id. After "Lilith" expressed that she was in pain, "nechris" commented that she should use lubricant and touch her genitals, and confirmed member "Neverreal" made a similar suggestion. Id. "Lilith"

then said, "The vid is at like 26%." Id. "Lilith" subsequently posted a video of herself inserting a brush into her anus in the "Femoid gallery" part of the Rapey website. [Ex. 235-235B].

On November 2, 2020, "nechris" engaged in a conversation in Rapey's public chat with "yoonji" and other users, in which he tried to persuade her to make a "pee video." [Ex. 225A]. As "yoonji" testified, she was 17 at the time, and her profile also described herself as 17. [Ex. 225]. In the public chat, "yoonji" responded that she would not make that kind of video, but "nechris" continued to urge her on, as did confirmed user "DirtMcGirt." Id. "Nechris" then commented on a nude image that "yoonji" had previously posted and wrote in the thread, "Just bringin [sic] this back to the front of the forum and reminding everyone that she implied she'd do a peeing video for us. It's about due." [Ex. 221]. By commenting on the post, "nechris" elevated it to Rapey's front page. "Yoonji" responded in the thread with an angry face emoticon. Id. "Nechris" continued, "See? Front of gallery, – and – everyone is gonna start commenting now on it." Id. Several users then commented appreciatively on "yoonji's" previous post. Id.

At some point during Rapey's existence, according to the testimony of the three minor victims "Bananacabana," "Pastel," and "yoonji," multiple adult and minor users moved to an online communications platform known as Discord. Discord functions around "servers" created by users, and users with access to a specific server can engage in text and voice messaging and audio and video calls with other members of the server, both privately or in groups, as well as share images and videos. "Yoonji" testified that Rapey users, including "nechris," "AgentNippy," "Pastel," "Bananacabana," and "skinny," moved to a Discord server because Larson appeared to be "mentally unwell" on Rapey. "Bananacabana" testified that "nechris" invited her to join the Discord server, and "Pastel" testified that she was invited to join by "DirtMcGirt," but "nechris" appeared to have a "commanding position" on the platform. On

9

Rapey, "nechris" discussed the Discord server in direct messages with several users whose profiles reflected that they were minors and invited them to join the Discord sever. To one user he invited to join the Discord server, "nechris" described the platform: "It's really meant for . . . 'If the site goes down, we'll all still be connected and friends' server." [Ex. 233]. Although members of the Discord server at times engaged in conversations and activities that were not sexual in nature, such as playing the videogame Minecraft, sexually explicit videos and images were shared on Discord in which minors displayed their genitalia and masturbated. All three minors testified that "nechris" requested that they send him nude images and videos of themselves on Discord. "Pastel" also testified that she joined group calls on Discord with "nechris," during which minor users were asked to show their genitals on video to adult users. "Nechris" sent all three minors images and videos of himself, which enabled them to identify Keuhner in court as "nechris." "Yoonji" testified that "nechris" posted a diploma that reflected his name—Christopher Kuehner.

On December 7, 2021, law enforcement executed a search of Kuehner's apartment in Bremerton, Washington. Kuehner waived his <u>Miranda</u> rights and engaged in a voluntary interview with law enforcement as his residence was being searched. During the interview, he admitted that he joined Rapey in September or October of 2020, his Rapey username was "nechris," and he uploaded a confirmation photo to the website with "rapey.su" written on his arm. [Ex. 703A] at 9, 12, 16-18, 23. He admitted to knowing that Larson was the owner of the website and that Larson temporarily made him an administrator to help with verifying members. <u>Id.</u> at 18-19, 42-45. Kuehner also admitted to encountering child sexual abuse material on Rapey, including of minor females, but explained that he did not report the website to law enforcement because he was "afraid of [his] own involvement." <u>Id.</u> 24, 52. Kuehner denied

being behind all of "nechris's" activity on Rapey and recalled rumors that Larson would "use other people's profiles," id. at 34, and described Rapey as "designed around Nathan Larson collecting these videos and pictures. . . . Of these young girls. Child pornography," id. at 51.

### C. Kuehner's Impersonation Defense

Although Kuehner admits that he registered as a member of Rapey with the name "nechris," his defense at trial was essentially that he was not always the person behind the "nechris" alias between September 2020 and December 2020. The defense called no witnesses and introduced no evidence, but argued that Larson, using his administrator privileges, was able to access "nechris's" account and could act as "nechris" on the website, and therefore that the government could not prove beyond a reasonable doubt that Kuehner was involved in all the interactions with the minors. She tried to support this argument with the testimony of James Fottrell, the Director of the High Technology Investigative Unit, who explained that as an administrator, Larson had access to an administrative control panel for each Rapey user and could not only view the statistics, activity, and IP addresses associated with a user, but could also edit a user's profile details, change the password, and the modify or delete the change logs for the account.

As evidence that Larson acted as "nechris" and thereby impersonated Kuehner, defense counsel argued that inexplicable changes were made to "nechris's" profile which suggested unauthorized access and use of the account. For example, "nechris" changed his height from five feet and eight inches to five feet and six inches, his race from "Caucasian/Asian" to "White," his eye color from brown to green, and his hair from black to brown, and he also removed his age. [Ex. 213A]. Moreover, defense counsel pointed out that over a few days, Larson, as "Leucosticte," gave "nechris" administrator privileges and then rescinded them. Id. Defense counsel surmised that Larson might have been motivated to impersonate "nechris" to

11

further his goal of "harvesting" child pornography on the Rapey website because "nechris's" user statistics indicated that "nechris" generated positive responses from members of the website, and that by pretending to be "nechris," Larson could have more successfully obtained sexually explicit material.

Defense counsel suggested two ways in which Larson could have impersonated "nechris." First, even though the administrative control panel for "nechris's" user profile showed his password as a series of asterisks, i.e., "*****", Larson could have cut and pasted the password and logged in as "nechris." In response, Director Fottrell explained that although he did not attempt to cut and paste the password, it would not be feasible to do this because passwords on websites like Rapey are stored in encrypted format and not in a plain text format that could be copied and pasted. Defense counsel further argued that Larson could have changed "nechris's" password and logged in as him, and once he was done pretending to be "nechris," deleted any record of password changes in the user change log for "nechris." Defense counsel also observed that multiple back-up copies of Rapey existed, any one of which could have been used to obscure traces of Larson's impersonation. Director Fottrell explained that although it was possible for Larson to have accessed "nechris's" account and covered his tracks, it was highly unlikely because of the complex actions that carrying out this scheme would have required. For example, Larson would have needed to know "nechris's" original encrypted password to be able to change the password back to prevent "nechris" from detecting the unauthorized access, but Larson could not have known "nechris's" original password given that it was stored on Rapey in encrypted format. Moreover, Larson would have needed to log in from the same geolocation as "nechris" to "fool" the log records, and Larson would have needed to falsify the numerous administrator logs across the Rapey website to cover his tracks.

Finally, defense counsel elicited from Director Fottrell that both Comcast and Leaseweb IP addresses were associated with "nechris's" account, and argued that the Leaseweb IP addresses were located in California and not geographically associated with Kuehner, indicating that someone else like Larson could have accessed the account. In response, the government pointed to the IP address log associated with "nechris," and Director Fottrell testified that the majority of the IP addresses were geolocated to the Seattle, Washington area, where Kuehner resided, only some were geolocated to California, and none were geolocated to Virginia, where Larson resided. Director Fottrell explained that if Larson had logged into Rapey as "nechris," the IP address logs for "nechris" would have reflected an IP address associated with Larson, presumably geolocated to Catlett, Virginia, unless Larson was able to spoof his location; however, there were no Virginia-based IP addresses. On redirect, defense counsel suggested that Larson could have added a layer to his internet connection to spoof an IP address in California.

Although defense counsel's theory that Larson impersonated Kuehner as "nechris" is hypothetically possible, it is not plausible. The evidence established beyond a reasonable doubt that Kuehner was "nechris" during all relevant times on the Rapey website. Director Fottrell's testimony credibly showed that it would be extremely difficult for Larson to impersonate "nechris." Moreover, Kuehner not only admitted to law enforcement that his username was "nechris" and that he posted a confirmation photo which showed his face, he also shared photos of himself and personal details during conversations with minors on Rapey and subsequently on Discord, which enabled them to identify Kuehner as "nechris." In his private conversation with "Bananacabana" on September 30, 2020, "nechris" told her personal details about himself—such as that he was born in Australia and his father was a sailor—which Kuehner also shared with law

enforcement when he was interviewed on December 7, 2021, further corroborating his identity. See [Ex. 703A] at 3.

Even though no sexually explicit images of minors were found on devices seized from Kuehner's residence in Bremerton, Washington, the devices contained forensic artifacts showing that Kuehner had at some point in the past possessed and accessed sexually explicit images of Rapey users "Pastel" and "yoonji." For example, .LNK files, which are shortcut files that may be recovered even if the original underlying files are deleted from the device, were found on Kuehner's desktop computer and matched the file names of four sexually explicit images of "yoonji" recovered from the Rapey server. [Exs. 223, 301]. A file name in the Dropbox database on Kuehner's desktop computer also matched the file name of a sexually explicit image of "Pastel" recovered from the Rapey server. [Exs. 245B, 305]. Other forensic evidence from Kuehner's desktop computer and hard drive showed that Kuehner had used variations of the alias "nechris." In sum, the government produced sufficient evidence that established beyond a reasonable doubt that Kuehner was "nechris" from September 2020 through December 2020.

## III. CONCLUSIONS OF LAW

Kuehner was charged with one count of engaging in a child exploitation enterprise in violation of 18 U.S.C. § 2252A(g). To prove that the defendant engaged in a child exploitation enterprise, the government must establish that the defendant (1) "violate[d] section 1591, section 1201 if the victim is a minor, or chapter 109A (involving a minor victim), 110 (except for sections 2257 and 2257A), or 117 (involving a minor victim), as a part of a series of felony violations constituting three or more separate incidents," (2) "and involving more than one victim," and (3) the defendant "commit[ed] those offenses in concert with three or more other

14

persons." 18 U.S.C. § 2252A(g); see United States v. El-Battouty, 38 F.4th 327, 329 (3d Cir. 2022).

## A. **Predicate Violations**

The evidence established that Kuehner committed a series of predicate felony violations constituting over three or more separate incidents. 18 U.S.C. §§ 2251(a) and (e) criminalize production and attempted production of child pornography, which are predicate offenses of engaging in a child exploitation enterprise under § 2252A(g). Section 2251(a) contains three elements: (1) the victim was less than 18 years old, (2) the defendant "employ[ed], use[d], persuade[d], induce[d], entice[d], or coerce[d]" the victim to engage in "sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct," and (3) the defendant knew or had reason to know "that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce . . . or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed." 18 U.S.C. § 2251(a); see United States v. Malloy, 568 F.3d 166, 169 (4th Cir. 2009).

The evidence unequivocally showed that Kuehner violated or attempted to violate § 2251(a) in at least five separate incidents as "nechris" on the Rapey website. As to the first element, the evidence established beyond a reasonable doubt that all of the victims identified at trial were under the age of 18. Two of the victims, who used the usernames "Bananacabana" and "yoonji," testified that they were 14 and 17, respectively. Law enforcement visited two other victims, who used the aliases "Skinny.freakkkk" and "Lilith," and verified that they were both 15, which was corroborated by their birth certificates.

As for the second element, the terms "persuade," "induce," and "entice" are not statutorily defined, but they are to be given their "ordinary meaning" and are "effectively synonymous," conveying the idea "of one person leading or moving another by persuasion or influence, as to some action [or] state of mind." United States v. Engle, 676 F.3d 405, 411 n.3 (4th Cir. 2012). "Sexually explicit conduct" is statutorily defined as, inter alia, "sexual intercourse," "masturbation" and "lascivious exhibition of the anus, genitals, or pubic area of any person" 18 U.S.C. § 2256(2)(A). The second element of § 2251(a) also requires that the production of a visual depiction be "the purpose" or "a significant" or "motivating" purpose of the sexual activity, United States v. McCauley, 983 F.3d 690, 695-97 (4th Cir. 2020); however, the government need not prove that the defendant was "single-minded" in this purpose. United States v. Palomino-Coronado, 805 F.3d 127, 131 (4th Cir. 2015) (explaining that § 2251(a) requires that the defendant "engage in the sexual activity with the specific intent to produce a visual depiction").

In support of this element, the government introduced numerous chat threads on Rapey involving messages sent by Kuehner to minors showing that he induced or attempted to induce them to film sexually explicit videos. First, Kuehner communicated with "Bananacabana," who was 14, and persuaded her to film herself masturbating, describing the specific acts he wanted to see her perform, and "Bananacabana" subsequently posted videos of herself masturbating to the Rapey website. Second, Kuehner communicated with "Skinny.freakkkk," who was 15, and attempted to persuade her to film herself engaging in sexual acts with a 14-year-old male, including oral intercourse. Third, Kuehner persuaded "Skinny.freakkkk" to film a video of herself masturbating, after which "Skinny.freakkkk" posted videos of herself masturbating on Rapey. Fourth, Kuehner instructed "Lilith," who was 15, to film herself inserting a brush in her

16

anus and gave her suggestions on performing the act, and "Lilith" later posted a video depicting that act. Fifth, Kuehner attempted to persuade "yoonji," who was 17, to create a "pee video." [5] Evidence of all of these acts established the persuasion or inducement requirement of §§ 2251(a) and (e) beyond a reasonable doubt.

As for the intent requirement, there is overwhelming direct evidence indicating that Kuehner's purpose in all five incidents was to have the minor victims produce a visual depiction of the sexual activity that he encouraged, because in his messages with the minors, he explicitly requested videos from them depicting the sexual activity. Moreover, all of Kuehner's conversations took place via the Rapey website, on which minors shared and were encouraged to share sexually explicit images and videos, further supporting that Kuehner's purpose in persuading minors to engage in sexual activity was to have them create visual depictions to be shared via the website.

Finally, the third element, requiring either knowledge that the "visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce" or actual transportation or transmission of the visual depiction "using any means or facility of interstate or foreign commerce," is also clearly established beyond a reasonable doubt. 18 U.S.C. § 2251(a). As to all five incidents, the videos produced by the minors at Kuehner's urging were shared and posted online on the Rapey website, or in the cases of the attempted violations, Kuehner's request for videos on Rapey's messaging platforms indicated that he knew

---

[5] During her closing argument, defense counsel questioned whether a "pee video" satisfies the sexually explicit requirement. There is no doubt that a video depicting a nude minor urinating constitutes "lascivious exhibition . . . of the genitals," 18 U.S.C. § 2556(2)(A)(v), which the Fourth Circuit has explained means "a depiction which displays or brings forth to view in order to attract notice to the genitals or pubic area of children, in order to excite lustfulness or sexual stimulation in the viewer." United States v. Courtade, 929 F.3d 186, 192 (4th Cir. 2019).

that the requested videos, if produced, would be transmitted via the internet.  Use of the internet

satisfies the interstate commerce element of § 2251(a).  See United States v. Miltier, 882 F.3d

81, 87 (4th Cir. 2018) (holding that "use of the internet in the transmission of child pornography

satisfies the interstate commerce element" of receipt of child pornography under 18 U.S.C. §

2252A(2)(A)).

     All of these incidents also constituted enticement or attempted enticement of a minor to

engage in unlawful sexual conduct in violation of 18 U.S.C. § 2422(b).  To prove enticement, the

government must establish that the defendant (1) used a facility of interstate or foreign

commerce; (2) to "knowingly persuade[], induce[], entice[], or coerce[]; (3) a person under the

age of 18; (4) "to engage in . . . any sexual activity for which any person can be charged with a

criminal offense."  18 U.S.C. § 2422(b); see Engle, 676 F.3d at 411.  "Sexual activity for which

any person can be charged with a criminal offense" includes, as relevant here, "the production of

child pornography," 18 U.S.C. § 2427, defined in § 2256(8) as "the production of such visual

depiction [that] involves the use of a minor engaging in sexually explicit conduct."

     For the reasons explained as to Kuehner's violations of § 2251(a), the evidence

established the age and interstate commerce elements beyond a reasonable doubt.  The second

element requires only that the defendant "achieve [or attempt to achieve] a mental state—a

minor's assent" to engage in illegal sexual activity, "regardless of the accused's intentions

[concerning] the actual consummation of sexual activities with the minor."  Engle, 676 F.3d at

419.  Because the nature of the offense is persuasion, inducement or enticement to engage in

unlawful sexual activity, § 2422(b) "necessarily contemplates oral or written communications as

the principal if not the exclusive means of committing the offense."  Id. at 423.  The evidence

showed that Kuehner had numerous graphic communications with four minor victims,

18

"bananacabana," "yoonji," "Skinny.freakkkk," and "Lilith," in which he attempted to persuade them or actually succeeded in persuading them to engage in sexually explicit conduct and produce videos of themselves, satisfying the second and fourth elements of enticement or attempted enticement.

In sum, the government has proved beyond a reasonable doubt that Kuehner committed a series of violations of both §§ 2251(a) and (e) and § 2422(b) constituting three or more separate incidents.

## B. Number of Victims

18 U.S.C. § 2252A(g) requires that the series of felony violations committed by the defendant "involv[ed] more than one victim." As of the date of this opinion, the Fourth Circuit has not published any authority on the interpretation of the elements of § 2252A(g),[6] and case law on the statute is limited among district courts in this Circuit; however, courts in other circuits have concluded that in determining whether more than one victim was involved in the series of violations, the predicate violations may be considered in combination. See United States v. Daniels, 653 F.3d 399, 412 (6th Cir. 2011). In this case, the evidence established that at least four minor victims—two of whom testified at trial—were involved in the series of felony violations committed by Kuehner.

## C. "In Concert With" Requirement

To establish the final element of engaging in a child exploitation enterprise, the government must prove beyond a reasonable doubt that the defendant committed the predicate

---

[6] The only opinion by the Fourth Circuit concerning § 2252A(g) is an unpublished opinion which affirmed the conviction of a defendant for engaging in a child exploitation enterprise and several child exploitation offenses, but that opinion did not interpret the meaning of the specific elements of § 2252A(g). See United States v. Chase, 757 F. App'x 273 (4th Cir. 2019).

violations "in concert with three or more other persons." 18 U.S.C. § 2252A(g). Courts that

have considered the meaning of the "in concert with" language in § 2252A(g) have held that it

"requires the same mens rea as a conspiracy charge," that is, "proof of an agreement with three

or more other persons to commit the series of predicate felonies." United States v. Grovo, 826

F.3d 1207, 1214 (9th Cir. 2016) (internal quotations omitted); see Daniels, 653 F.3d at 413

(holding that "some type of agreement must be shown beyond a reasonable doubt" (internal

quotations omitted)); United States v. DeFoggi, 839 F.3d 701, 710 (8th Cir. 2016) (holding that

"'in concert with' requires the same mens rea as a conspiracy charge"); United States v.

Wayerski, 624 F.3d 1342, 1351 (11th Cir. 2010) (holding that § 2252A(g) "requires the same

proof of an agreement that would also violate [a] conspiracy [charge]" for the same predicate

offenses). As the Supreme Court has explained in the context of the continuing criminal

enterprise statute, 18 U.S.C. § 848(c), which contains a similar "in concert with" requirement,

"the plain meaning of the phrase 'in concert' signifies mutual agreement in a common plan or

enterprise.'" Rutledge v. United States, 517 U.S. 292, 300 (1996).

As for the numerical component of the "in concert with" element, in her closing

argument, defense counsel urged the Court to interpret the element as requiring that each

predicate violation be committed in concert with three or more other persons; however, the

Third, Sixth, Eighth, and Ninth Circuits have all concluded that the "in concert with"

requirement "refers to the series of offenses cumulatively, rather than individually." El-Battouty,

38 F.4th at 329; see Grovo, 826 F.3d at 1215; Daniels, 653 F.3d at 412; DeFoggi, 839 F.3d at

710 n.4. In the absence of binding authority from the Fourth Circuit, the Court agrees with these

circuits that "three or more persons" may be tallied by considering the predicate felony violations

together as a whole. As these courts have reasoned, the statute provides that the defendant must

20

commit "those offenses" constituting the series of felony violations in concert with at least three

other persons, but does not require commission of "each offense" with at least three other

persons. Grovo, 826 F.3d at 1215; El-Battouty, 38 F.4th at 329. This interpretation also

comports with the Fourth Circuit's interpretation of the "in concert with" requirement in the

continuing criminal enterprise statute under 18 U.S.C. § 848(c). See United States v. Johnson,

54 F.3d 1150, 1155 (4th Cir. 1995) (observing that to satisfy the requirement that "a continuing

series of violations . . . [be] undertaken . . . in concert with five or more other persons" under §

848(c), "the [g]overnment need not prove 'that the five individuals . . . acted in concert at the

same time, or even that [they] were collectively engaged in at least one specific offense'"

(quoting United States v. Ricks, 882 F.2d 885, 891 (4th Cir. 1989))).

Here, where the predicate violations are production and attempted production of child

pornography, as well as enticement and attempted enticement, the government must prove an

agreement among Kuehner and at least three other persons to produce or attempt to produce

visual depictions of minors engaged in sexual acts or to entice or attempt to entice them into such

acts. The agreement need not be explicit but may be "inferred from the facts and circumstances

of the case," and a "tacit or mutual understanding among or between the parties will suffice."

United States v. Crews, 28 F. App'x 247, 249 (4th Cir. 2002) (first quoting United States v.

Baker, 985 F.2d 1248, 1255 (4th Cir. 1993), then quoting United States v. Depew, 932 F.2d 324,

326 (4th Cir. 1991)) (defining elements of conspiracy to produce child pornography under a prior

version of 18 U.S.C. § 2251).

The evidence introduced at trial established that Kuehner had a tacit agreement with at

least three other Rapey users to induce or attempt to induce or entice or attempt to entice the

minor users to produce sexually explicit visual depictions. Kuehner enticed minors to engage in

21

unlawful sexual activity and produced or attempted to produce child pornography to be posted on the Rapey website, which was administered by Larson and involved multiple other members who also encouraged minors to produce sexually explicit visual content.  Although some of Kuehner's conduct occurred in direct messages with minors, many of the conversations occurred in Rapey's public chat, and the evidence established that the violations were all part of a broader effort by multiple users to produce content that would be or was in fact shared on the Rapey website.  Specifically, the public chat transcripts and posts introduced at trial showed that, in addition to Larson, at least four confirmed members—"DirtMcGirt," "Neverreal," "AgentNippy," and "AnonSlut"—joined in Kuehner's efforts to entice and persuade the minors to engage in sexually explicit conduct and share visual depictions on Rapey by describing the sexually explicit conduct in which they wanted the minors to engage, affirming Kuehner's messages, or responding appreciatively to sexually explicit images and videos posted by minors. Cf. Grovo, 826 F.3d at 1216 (holding that evidence that members of an online bulletin board posted content and "respond[ed] appreciatively to others' posts" was sufficient by itself to support a finding that the defendants acted in concert with three or more individuals to distribute, receive, or access with intent to view child pornography).  All of these users' profiles indicated that they were confirmed members, which supports that they were real persons in light of the established requirements of Rapey's confirmation process.  As further evidence that real persons were involved, minor victims "yoonji" and "Pastel" testified that Rapey users "AgentNippy" and "DirtMcGirt" also joined the Discord server.  And considering the nature and content of the conversations among the members and their posts, there is no reasonable doubt that all of the aforementioned users were real individuals with whom Kuehner acted in concert, not merely fictitious online personas.

22

Because the evidence established all three elements of 18 U.S.C. § 2252A(g) beyond a reasonable doubt, the Court found Kuehner guilty of engaging in a child exploitation enterprise.

## IV. CONCLUSION

For the reasons stated above, the Court reaffirms its conclusion that the defendant, Christopher William Kuehner, is guilty of Count I of the Indictment.

Entered this 31st day of January, 2023.

Alexandria, Virginia

/s/

Leonie M. Brinkema
United States District Judge