THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Case No. 1:22CR120-004 |
| ) | The Hon. Leonie M. Brinkema |
| CHRISTOPHER WILLIAM KUEHNER, ) | |
| et al. ) | Sentencing Date: 4/25/23 |
| ) | |
| Defendants. ) | |

## DEFENDANT'S POSITION ON SENTENCING & RESTITUTION

COMES NOW, the Defendant, Christopher William Kuehner ("Mr. Kuehner") by and through counsel, and pursuant to Rule 32 of the Federal Rules of Criminal Procedure and this Court's policies and procedures regarding sentencing, states that he has received and reviewed a copy of the Presentence Investigation Report ("PSR") filed in this case with counsel, and he has one unresolved objection for the court to adjudicate. In consideration of same, as well as of 18 U.S.C. §3553(a) ("3553"), the United States Sentencing Guidelines ("USSG" and/or "Guidelines") and *United States v. Booker,* 543 U.S. 220, 125 S. Ct. 738 (2005) and its progeny, Mr. Kuehner respectfully presents his Position on Sentencing as set forth below:

## APPLICABLE LAW ON SENTENCING

The Court is mandated to exercise discretion in the imposition of a sentence that is "sufficient, but not greater than necessary" to achieve the enumerated objectives of criminal sentencing, and this exercise must include a consideration not only of the Guidelines, but also of each of the factors laid out in 3553. *See Kimbrough v. United States*, 552 U.S. 85 (2007); *Gall v. United States*, 552 U.S. 38 (2007); *Nelson v. United States*, 555 U.S. 350 (2009). The Guidelines, therefore, cannot be substituted for the sentencing court's independent determination

1

of an appropriate sentence which necessarily includes full consideration of all of the 3553 factors. *Nelson,* 555 U.S. at 352. ("Our cases do not allow a sentencing court to presume that a sentence within the applicable Guidelines range is reasonable . . .. The Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable." (emphasis in original) (citations omitted)); *see also, Spears v. United States*, 129 S. Ct. 840 (2009), 2009 WL 129044 (Jan. 21, 2009). *Nelson* and *Spears* emphasize the purely advisory nature of the Guidelines and the *primacy* of the 3553 factors, objectives and mandate first set forth in *Kimbrough* and *Gall* and require federal courts to impose the lowest sentence that can accomplish said objectives.

## POSITION ON GUIDELINE CALCULATION

I. *Defendant Objects to the Application of an Enhancement Pursuant to USSG § 4B1.5(b)(1).*

§ 4B1.5(b)(1) is located in Chapter Four of the USSG, which deals with "Career Offenders and Criminal Livelihood." According to the commentary, it "applies to offenders ... who present a continuing danger to the public," and is derived from congressional directives "to ensure lengthy incarceration for offenders who engage in a pattern of activity involving the sexual abuse or exploitation of minors." *USSG § 4B1.5(b)(1), comt., Background; United States v. Dowell*, 771 F.3d 162, 171 (4th Cir. 2014). It applies when a defendant, convicted of a sex crime, "engaged in a pattern of activity involving prohibited sexual conduct," which occurred "if on at least two separate occasions, the defendant engaged in prohibited sexual conduct with a minor," USSG § 4B1.5 cmt. n.4(B).

> For purposes of subsection (b), "**prohibited sexual conduct**" means any of the following: (i) any offense described in 18 U.S.C. § 2426(b)(1)(A) or (B); (ii) the production of child pornography; or (iii) trafficking in child pornography only if, prior to the commission of the instant offense of conviction, the defendant sustained a felony conviction for that trafficking in child pornography. It does

2

> not include receipt or possession of child pornography. "***Child pornography***" has the meaning given that term in 18 U.S.C. § 2256(8).

*Id.*

In its Memorandum Opinion (Dkt. 117), at 6-8, the Court made factual findings that Mr. Kuehner engaged in at least two instances of enticement of production of child pornography by two minor members of the rapey.su website. Mr. Kuehner concedes that these factual findings support the application of the enhancement, but preserves his objection to the factual findings on the basis that it remains his position that while he does not deny his involvement in and active participation in the rapey.su website, the government failed to prove beyond a reasonable doubt that on each specific instance of the commission of the predicate offenses for a conviction under the "enterprise" statute, it was *in fact* Mr. Kuehner engaging in the enticement activity and not Larson or another administrator logging in as his username.

Furthermore, as more particularly discussed below with respect to consideration of the 3553(a) factors, in cases such as this where 18 U.S.C. § 2252A(g) is the offense of conviction, this enhancement "double-counts" offense conduct intrinsic to the offense of conviction, and should therefore not apply.

**POSITION ON APPLICATION OF 18 U.S.C. § 3553(a) FACTORS**

I. *The Nature and Circumstances of the Offense & Unjust Enhancements Which Warrant a Variant Sentence*

At a certain point during the early days of the COVID-19 pandemic, Mr. Kuehner, an honorably discharged servicemember diagnosed with PTSD—found himself isolated. No longer meeting with friends as often as he had, he was alone with his thoughts, including the lingering nightmares about the young girl who, having lost an arm and a leg, died as he held her hand and watched. He thought he had saved her, but he could not. PSR at para. 94. A few years prior, he had

3

already started to abuse alcohol, but was able to obtain treatment, enroll in school, and find a network of friends to help him cope. When COVID shut down school and therapy, alcohol and the internet were, as he saw it, all he had. What started out as curiosity led him down the very dark path to the rapey.su website.

Perhaps Mr. Kuehner was drawn to the tragedy of the young girls on the site as some connection to the literally "broken" young girl he could not save during the war, but whatever the reason (which he will have to explore in extensive therapy and sex offender treatment), he became enmeshed in an appalling and illegal subculture, led by Nathan Larson, who founded the website based on his own twisted misogynistic philosophy. Mr. Kuehner's involvement in the rapey.su website spanned only a few months, of an otherwise law-abiding life, and he now faces a mandatory minimum of 20 years in federal prison.

Despite the severity of the offense, the sentencing guidelines are unduly draconian, mainly because provide for factually applicable, but nevertheless unjust enhancements to an already high base offense level and mandatory minimum, which in the case of a charged "enterprise," "double count" behavior intrinsic to the charged offense.

The first, which is the use of a computer device, factually applies to this case—but it's an enhancement that should frankly be eliminated. The days of passing photos in person or finding CSAM in the dark hidden room of an unsavory back-alley shop are long gone. With what could only be the extraordinarily rare exception, *all* sexual exploitation cases involve the use of a computer. If video or pictures are taken, they are taken with or stored on computers, hard drives, phones, tablets. The only way files are shared, meetings are arranged, material is solicited, etc., is by way of a computer device or interactive computer service. While the statute doesn't require the use of a computer device or interactive computer service, it is difficult to imagine in the modern era how or why the offense would be conducted without it. This warrants consideration of a variant sentence.

The second, which is the enhancement discussed above, meant for those "offenders whose instant offense of conviction is a sex offense committed against a minor and who present a continuing danger to the public," (*U.S.S.G. § 4B1.5, Background*) is actually triggered by the very activity comprising the elements of the offense of conviction, only to a *lesser* standard than the elements of the offense of conviction. Put simply, this "enhancement" in this case requires *lesser conduct* than the offense itself, so it's clearly not an aggravator as enhancements are meant to be.

Specifically, the offense of conviction requires a finding of a "series of felony violations" consisting of at three separate instances of violation of one or more of the enumerated offenses, resulting in two or more victims, while in concert with at least three others. 18 U.S.C. 2252A(g). The "pattern" and "two occasions" required for the guideline enhancement are baked into this relatively infrequently utilized statute, which carries the mandatory minimum 20-year sentence *because of these very elements*. Therefore, while the enhancement is factually applicable, a variant sentence is warranted given the nature and circumstances of *this specific offense*.

II. *History and Characteristics of the Defendant*

Mr. Kuehner is a 38-year-old Army veteran who served on active duty for 11 years and saw multiple tours of duty including in Afghanistan. He comes from a tradition of military service, and though Mr. Kuehner is scarred both physically and emotionally by his experiences, he still feels that it was his life's calling and takes pride in his time in the armed forces. Despite suffering from PTSD, Mr. Kuehner had been attempting to address his issues in a productive manner with therapy and studies but was thwarted by COVID-19 and fell back into alcohol abuse. Prior to that, he assisted other veterans dealing with PTSD and suicidal thoughts in finding the help they needed to survive. In

addition, Mr. Kuehner has no criminal history prior to or following his engagement in the activities with the rapey.su website and its offshoot Discord group.

Importantly, Mr. Kuehner has the unwavering support of his parents, sister, and friends as evidenced in part by the attached letters in support, all submitted by individuals well aware of his offense. His family sat through the trial, which was difficult, to put it mildly. They don't find any excuses for the conduct in which Mr. Kuehner engaged, and they long to reason how or why the man that they know, and love, could have fallen so far. With a twenty-year minimum sentence looming, Mr. Kuehner's parents will be in their upper seventies and mid-eighties, at least, when he is released. They may no longer be living, and so he suffers knowing that the last holiday spent with them may very well have been the last. Nieces and nephews who are yet to will be unknown to him, as he will not be permitted to have photos or interaction with minors, but he would likely miss the entirety of their childhoods in any event.

The worst consequence of all is the loss of his daughter. Since the FBI interview of Mr. Kuehner's daughter, he has hardly seen her. The last time was November 2021, and she has reportedly started going by a different name to distance herself from him completely.

### III. Deterrence and Promoting Respect for the Law

Mr. Kuehner has been in jail since January but has been attempting (often in vain) to mentally and emotionally prepare for the his sentence in this case since being charged. He stopped his offense behavior well before he was arrested and so his rehabilitative effort has been underway for some time. He has already experienced individual deterrence and will be physically deterred even in the unlikely event of a resurfacing of whatever triggered his offense conduct not only by a lengthy prison sentence, but by the mandatory reporting, registering, treatment, and monitoring to which he will be subject thereafter.

As for general deterrence, studies have shown that longer sentences are *not* a greater deterrent to criminal behavior. *See* Wright, Valerie. "Deterrence in Criminal Justice: Evaluating Certainty vs. Severity of Punishment," (Nov. 2010). For those for whom it matters (i.e., those who would be deterred) *punishment itself is deterrence*. The Institute of Criminology at Cambridge University found in 1999 that there was no evidence to support the notion that increased sentences resulted in greater deterrence but that there was evidence, from studies of offense rates in particular populations, that the greater the likelihood (or probability) of punishment, the lower the crime rate. *See id.* at 4 *citing* Andrew von Hirsch, Anthony Bottoms, Elizabeth Burney, and P.O. Wikstrom, "*Criminal Deterrence and Sentence Severity: An Analysis of Recent Research*," Oxford: Hart Publishing, 1999. Leading scholars on the subject, Daniel Nagin and Greg Pogarsky, reached a similar conclusion: that "punishment certainty is far more consistently found to deter crime than punishment severity, and the extra-legal consequences of crime seem at least as great a deterrent as the legal consequences." Wright at 4 *citing* Daniel Nagin and Greg Pogarsky. "*Integrating Celerity, Impulsivity, and Extralegal Sanction Threats into a Model of General Deterrence: Theory and Evidence*," Criminology, 39(4), 2001.

IV.  The Kind of Sentences Available and Avoiding Disparity

Mr. Kuehner will serve a *long* sentence, in particular conditions, due to the nature of his offense. He won't be able to exchange emails as many prisoners are, among other limitations. Upon release, he will have to register as a sex offender and face potentially lifelong supervised release monitoring. He will have limits as to where he can live, computer access, and more.

The only other individual sentenced thus far with relation to the rapey.su website was not charged with engaging in an enterprise, though she was convicted of posting CSAM material of to the site. For this egregious behavior, she was sentenced to the mandatory minimum of fifteen years

on two counts, to run concurrently. PSR at 4, para. 9. Three of the co-defendants (Larson, Mullins and Leshear) met and had sex —including by forcible rape—with minors they met through the rapey.su website. This is the most egregious behavior arising out of the charged enterprise, and despite his having the means to travel, it is a step Mr. Kuehner *did not take*. Four of the five co-defendants (*excluding* Mr. Kuehner) distributed images or video of pre-pubescent minors engaged in sexual activity, including activity *with them*. Nathan Larson, the "lead defendant," decided that rather than face justice, he would starve himself to death. Weakened and (upon information and belief) affected by COVID, he escaped any earthly reckoning whatsoever for the founding, administration, and complete control of this and many other sites exploiting women and children and espousing white supremacy, as well as the kidnapping and rape of a 12-year-old girl.

## POSITION ON RESTITUTION

I.   *Applicable Law*

The government is required to prove by a preponderance of the evidence that the individual seeking restitution is a "victim" for purposes of 18 U.S.C. § 2259. The statute defines "victim" as "the individual harmed as a result of a commission of a crime under this chapter." 18 U.S.C. § 2259(d)(4). Despite the government's contention that this "plainly includes any minor, sexually explicit images of whom were produced, distributed, received, accessed, or possessed by any member of the enterprise," (Dkt. 133 at 8) this is simply not the case according to applicable law, which is why none is cited in support. Circuit courts including our own have considered this clause—logically and justly—to mean "as a result of *the defendant's* commission of the offense," qualifying for restitution those victims of CSAM whose images were personally possessed or trafficked by the defendant. *See, e.g., United States v. Burgess,* 684 F.3d 445 (4th Cir. 2010); *United States v. Funke*, 846 F.3d 998 (8th Cir. 2017); *United States v. McDaniel*, 631

F.3d 1204 (11th Cir. 2011); *United States v. Aumais*, 656 F.3d 147 (2d Cir. 2011); *United States v. Church*, 701 F.Supp 2d 814, 817 (W.D.Va. 2010) ("Amy is a "victim," under the statute, meaning that she was "harmed as a result of" Defendant's commission of the offense. There are several distinct harms visited upon a victim as a result of an individual's possession of a pornographic image of the victim as a child . . ..").

Furthermore, the government's contention does not comport with the fact that the Supreme Court has held that the government must *also* prove by a preponderance of the evidence that defendant's conduct was a proximate cause of the victim's harm. *See, Paroline v. United States*, 572 U.S. 434, 448, 134 S.Ct. 1710, 1722 (2014). Even further, *if* a victim qualifies—i.e., they are determined to be victim whose harm was proximately caused by defendant—the district court should then "order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses." *Id.* at 458, 134 S.Ct. at 1727. Even in *Paroline*, in which the defendant *himself* possessed the victim's images, the Supreme Court held the following regarding the appropriate amount:

> The amount would not be severe in a case like this, given the nature of the causal connection between the conduct of a possessor like Paroline and the entirety of the victim's general losses from the trade in her images, which are the product of the acts of thousands of offenders. It would not, however, be a token or nominal amount. *The required restitution would be a reasonable and circumscribed award imposed in recognition of the indisputable role of the offender in the causal process underlying the victim's losses and suited to the relative size of that causal role.* This would serve the twin goals of helping the victim achieve eventual restitution for all her child-pornography losses and impressing upon offenders the fact that child-pornography crimes, even simple possession, affect real victims.

*Id.* at 459, 134 S.Ct. at 1727 (emphasis added).

> [F]actors that bear on the relative causal significance of the defendant's conduct in producing those losses. These could include the number of past criminal defendants found to have contributed to the victim's general losses; reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses; any available and reasonably

>reliable estimate of the broader number of offenders involved (most of whom will, of course, never be caught or convicted); whether the defendant reproduced or distributed images of the victim; whether the defendant had any connection to the initial production of the images; how many images of the victim the defendant possessed; and other facts relevant to the defendant's relative causal role.

*Id.* at 460, 134 S.Ct. at 1728.

Mr. Kuehner submits that none of the nine individuals for whom restitution requests have been submitted qualify as victims whose harm was proximately caused by Mr. Kuehner. Each is an individual whose images were found, according to the government, on the rapey.su website, or who ostensibly participated in the site activity with charged or uncharged members other than Mr. Kuehner. Two were boys, in whom there is no indication Mr. Kuehner had any interest in whatsoever, and all are individuals whose images were not possessed by Mr. Kuehner. As to three of the nine, there was no supporting documentation tying their invoiced charges to any causal link between even the site and their harm, let alone Mr. Kuehner.

## CONCLUSION

WHEREFORE, based on the foregoing, as well as in consideration of the attached letters in support, Mr. Kuehner respectfully prays that he be sentenced to no more than the twenty-year mandatory minimum. He further prays that the Court recommend a designation to a facility on the West Coast (acknowledging that his designation options are limited by his offense of conviction) and that be recommended for participation in the RDAP program should he be or become eligible at any point during his sentence of incarceration. Finally, Mr. Kuehner respectfully prays that no restitution order be entered.

Respectfully Submitted,

CHRISTOPHER WILLIAM KUEHNER
By Counsel

THE LAW OFFICE OF LANA MANITTA, PLLC

By:              /s/              .
Lana Manitta, VSB #42994
140B Purcellville Gateway Drive, #511
Purcellville, VA 20132
(703) 705-4428
FAX (703) 705-4429
Lmanitta@Manittalaw.com
Counsel for Mr. Kuehner


## CERTIFICATE OF ELECTRONIC FILING

I HEREBY CERTIFY THAT on April 18, 2023, I filed the foregoing with the clerk of the court using the CM/ECF system which will forward an electronic copy to all counsel of record.

By:              /s/              .
Lana Manitta, VSB #42994
140B Purcellville Gateway Drive, #511
Purcellville, VA 20132
(703) 705-4428
FAX (703) 705-4429
Lmanitta@Manittalaw.com
Counsel for Mr. Kuehner